

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2000

# Langford v. Atlantic City

Precedential or Non-Precedential:

Docket 00-5194

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Langford v. Atlantic City" (2000). *2000 Decisions.* Paper 250.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/250

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 18, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5194

LORENZO LANGFORD;
WILLIAM MARSH,

        Appellants

v.

CITY OF ATLANTIC CITY;
TIMOTHY MANCUSO;
BARBARA HUDGINS;
JOHN SCHULTZ;
EDWARD P. MCGETTIGAN;
GIBB R. JONES, JR.;
MICHAEL ZINGARELLI;
JAMES WHELAN

On Appeal from the United States District Court
For the District of New Jersey
(D.N.J. Crim. No. 99-cv-03064)
District Judge: Honorable Joseph E. Irenas

Argued: November 16, 2000

Before: SLOVITER, AMBRO and
GARTH, Circuit Judges

(Filed: December 18, 2000)

Sidney L. Gold
Lovitz & Gold
1835 Market Street
11 Penn Center, Suite 515
Philadelphia, PA 19103

Attorney for Appellant
Lorenzo Langford

Robert A. Davitch (Argued)
Scott A. George
Sidkoff, Pincus & Green, P.C.
1101 Market Street
Suite 2700
Philadelphia, PA 19107

Attorneys for Appellant
William Marsh

Gerald J. Corcoran (Argued)
Debra B. Albuquerque
Youngblood, Corcoran, Aleli, Laf ferty,
Stackhouse, Grossman & Gormley,
 P.A.
3205 Fire Road, P.O. Box 850
Pleasantville, NJ 08232

Attorneys for Appellees

OPINION OF THE COURT

GARTH, Circuit Judge:

The issue presented by this appeal is whether the plaintiffs, Lorenzo Langford ("Langford") and William Marsh ("Marsh"), can state a cause of action against a municipality, whose annual budget, by reason of a lack of funding, eliminated their school positions. W e hold that where the plaintiffs' Complaint char ging political retaliation alleges that the municipality, Atlantic City, violated their constitutional rights, it was error for the District Court to dismiss their Complaint pursuant to Federal Rule of Procedure 12(b)(6). We will r everse.

2

I

In March 1998, the Atlantic City Board of Education,
which employed plaintiffs Langford and Marsh, adopted a
proposed budget for the 1998-99 school year . The budget
did not include funding for several programs and nine
supervisory jobs, including Langford's and Marsh's jobs.1 A
total of approximately $1.4 million was needed to fund
those programs and jobs which were excluded from the
proposed budget. The unfunded programs included certain
school sports, transportation for some extra-curricular
activities and the continued use and operation of
community schools. Funding for these programs and jobs
was not included in the budget because their pr ojected
costs exceeded the maximum budget increase allowable
under New Jersey law.

On March 31, 1998, the Board of Education passed a
resolution asking Atlantic City voters to appr ove a "Budget
Cap Waiver" in the amount of $1.477 million, to fund all of
the programs and positions. The voters r ejected the Budget
Cap Waiver proposal. Notwithstanding that rejection, the
City Council was empowered without review to approve
unilaterally the Cap Waiver, and thus fund the threatened
positions and programs.

Langford and Marsh had opposed Mayor James Whelan
and the City Council defendants in the 1994 and 1998
elections. In the Atlantic City mayoral election held on May
12, 1998, Langford had run against, and lost to, Mayor

_____

1. Marsh was the Neighborhood Facilities Coordinator. His
responsibilities included coordinating and scheduling the community use
of high school facilities, supervising other employees, hiring staff for
adult and evening programs at school facilities, developing community
education programs for adults, and overseeing school buildings for civil
and community purposes. Marsh received an annual salary of $79,000
plus "lucrative employee benefits."

Langford was the Neighborhood Facilities Liaison. Langford's
responsibilities included organizing and supervising weeknight and
weekend community activities and events at a school facility, ensuring
maximum use of the school facility by the community, and assigning
security to cover events at the facility. His annual salary was $30,000,
together with employment benefits.

3

Whelan, Atlantic City's incumbent mayor. On May 15, 1998, the City Council voted to eliminate Langford's and Marsh's jobs as part of the budget reduction plan. Plaintiffs allege that their jobs were eliminated in retaliation for their political opposition to the Mayor in the 1998 election.

II

On June 29, 1999, Langford and Marsh filed the instant action in the District of New Jersey against the City of Atlantic City as well as its individual City Council members and Mayor Whelan. The defendants moved to dismiss the Complaint, asserting that it did not state a cause of action under Federal Rule of Civil Procedure 12(b)(6). The District Court granted that motion, and on December 27, 1999, the District Court dismissed all counts of Langford's and Marsh's Complaint against all defendants. In doing so, the District Court held that the individual defendants had immunity because their acts were legislative in nature.

As to Atlantic City, the District Court held that the passage of a budget does not constitute an official policy, custom, or practice triggering section 1983 municipal liability under Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691–95 (1978), and its progeny. The District Court distinguished the Monell line of cases, asserting that "[t]he single act in those cases is the act adopting the policy, not the act in furtherance of carrying out the policy." It reasoned that a single, official act creating policy suffices under Monell and Pembaur v. City of Cincinnati, 475 U.S. 469, 485 (1986), to establish municipal liability.

Langford and Marsh appeal only the dismissal of their section 1983 claims against the municipality –– Atlantic City. They do not appeal the District Court's dismissal of their section 1983 claims against the individual defendants. Langford's and Marsh's appeal was timely filed on February 17, 2000, and we have jurisdiction over the District Court's final order of December 27, 1999 pursuant to 28 U.S.C. S 1291.2

_____

2. Plaintiffs filed a motion to alter or amend the judgment, on January 6, 2000, pursuant to Federal Rule of Civil Procedure 59(e). The District Court denied plaintiffs' Rule 59(e) motion. Because we reverse the District Court's dismissal of the Complaint, we do not reach appellants' contention that the District Court erred in denying that motion.

4

III

Our standard of review is plenary and, in the context of a Rule 12(b)(6) decision by the District Court which dismissed all defendants and all counts of plaintif fs' Complaint, we adhere to the precepts which we summarized in Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996):

> We must determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief, and we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefr om. The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action. Since this is a S 1983 action, the plaintif fs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution. In considering a Rule 12(b)(6) motion, we do not inquir e whether the plaintiffs will ultimately pr evail, only whether they are entitled to offer evidence to support their claims. Thus, the district court's order granting the defendants' motion to dismiss will be affir med only if it appears that the plaintiffs could pr ove no set of facts that would entitle them to relief.

Id. (citations omitted).

IV

42 U.S.C. S 1983, the section relied upon by Langford and Marsh in their Complaint, subjects to liability every person who under color of state law or custom deprives a citizen of his or her constitutional rights. The Supreme Court in Monell, 436 U.S. 658, held that a municipality can be held liable as a person under section 1983 when it unconstitutionally implements or enforces "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the officers of that municipality. Id. at 690.3 By contrast, the Court expressly

_____

3. Notwithstanding the Court's statement in Monell, the word "policy" does not appear in the text of section 1983. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 841 (1985) (Stevens, J., dissenting).

rejected municipal S 1983 liability based on a respondeat superior theory, finding "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691.

In Monell, a class of female employees of the Department of Social Services and the Board of Education of New York City brought suit under section 1983, alleging that the City, through its agencies, had as a matter of official policy unconstitutionally compelled pregnant employees to take unpaid leaves of absence before they wer e medically necessary. Id. at 661. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under S 1983." Id. at 694. The Court concluded that New York City was liable under section 1983 because its policy respecting the unpaid leaves of absence for pregnant employees violated their constitutional rights. Id. at 692.

A significant portion of the discussion conducted before the District Court in this case focused on the Supr eme Court's decision in Pembaur, 475 U.S. 469, where both the county and the city were held liable for a county prosecutor's instruction to deputy sherif fs to break into a doctor's office to effect an arrest. Id. at 485. The Court noted that the municipal policy requirement discussed in Monell "was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Id. at 479.

Pembaur held that the Fourth Amendment was violated and that a municipality is liable for "acts which the municipality has officially sanctioned or or dered." Id. at 480. The Court concluded that "a municipality may be liable under S 1983 for a single decision by its pr operly constituted legislative body -- whether or not that body had taken similar action in the past or intended to do so in the future -- because even a single decision by such a body unquestionably constitutes an act of official government policy." Id. (emphasis added). "W e hold that municipal

6

liability under S 1983 attaches where-- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483-84.

In both Owen v. City of Independence, 445 U.S. 622 (1980), and City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 250-52 (1981), the Supreme Court consistently held that a single decision of a properly constituted legislative body is an act of official policy that may subject the municipality to section 1983 liability. In Owen , the Court ruled that the joint actions of the city manager and the city council in firing Owen violated his constitutional right to a pretermination hearing, even though the officials had acted in good faith. Owen, 445 U.S. at 630, 657. In Newport, the Court considered a section 1983 claim against a municipality that was premised on the unconstitutional conduct of the Newport City Council, Newport's legislative body. The plaintiff alleged that the Newport City Council's cancellation of its license to present musical concerts amounted to a violation of its constitutional rights of free expression and due process. Newport , 453 U.S. at 252. The Court upheld a jury verdict imposing compensatory damages against the city, although it held that a municipality is immune from punitive damages under section 1983. Id. at 271.

Concededly, Monell, Pembaur, Owen, and Newport were not concerned with the enactment of budgets that affected an aggrieved plaintiff. However, we have recognized that municipalities may be subject to section 1983 liability for legislatively-enacted budget decisions that have an unconstitutional effect. See Carver v. Foerster, 102 F.3d 96 (3d Cir. 1996). In so holding, we have spoken in terms of "legislative immunity." We recognize that Atlantic City did not claim legislative immunity as a defense to its asserted liability nor did the District Court refer to legislative immunity in connection with Atlantic City's liability as it did with respect to the individual defendants. Yet, the budgetary decisions to which we refer, infra, have alluded to and couched their liability analyses in ter ms of immunity as well as the policy statements to which Monell  refers.

7

In Carver, 102 F.3d 96, we held that Allegheny County did not enjoy legislative immunity when it committed a constitutional wrong. In Carver, the district court had rejected claims that the defendants, including Allegheny County, were entitled to legislative immunity from section 1983 suits. The plaintiffs there had char ged that Foerster, who was the Chairman of the Board of Commissioners of Allegheny County, and Allegheny County had eliminated their positions because they had supported a candidate, Joe Brimmeier, who had run in the Democratic primary for Prothonotary. Foerster had opposed Brimmeier , but Brimmeier had been supported by the Carver plaintif fs. Brimmeier lost.

Ultimately, the plaintiffs were fir ed, and the Salary Board eliminated their positions, after a "hit list" of Brimmeier supporters had been compiled. We noted in Carver that the "defendants assert that the positions wer e eliminated as part of a larger attempt to keep down administrative costs. The defendants further contended that at the same two sessions where the plaintiffs lost their positions, the Salary Board took additional actions affecting 19 other county departments, resulting in the elimination of twenty two other positions." Id. at 98.

We affirmed the district court's denial of summary judgment, holding that a city did not enjoy legislative immunity.4 As Carver explains, quoting Owen, 445 U.S. at 654:

> the central purpose of the Civil Rights Act was to provide citizens with a remedy against those who had abused state power. It hardly seems unjust to require a municipal defendant which has violated a citizen's constitutional rights to compensate him for the injury suffered thereby. Indeed Congr ess enacted S 1983 precisely to provide a remedy for such abuses of official

_____

4. The Carver court took jurisdiction over a denial of summary judgment analyzing the claims of absolute immunity as falling within the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Carver, 102 F.3d at 98–99. See also Mitchell v. Forsyth, 472 U.S. 511, 525 (1985), and Acierno v. Cloutier, 40 F.3d 597, 606 (3d Cir. 1994).

> power. . . . The knowledge that a municipality will be
> liable for all of its injurious conduct . . . should create
> an incentive for officials who may harbor doubts about
> the lawfulness of their intended actions to err on the
> side of protecting citizens' constitutional rights.

Carver, 102 F.3d at 104 (citation and internal quotations omitted). In the present case, Atlantic City eliminated the jobs of political opponents of the incumbent mayor . As in Carver, budgetary shortfall was the ostensible r eason for the elimination.

Carver is not alone in its holding that absolute immunity is not available to a municipality under section 1983, even in a budgetary context. The Fourth Circuit has held, en banc, that budgetary decisions render ed through legislative enactments may subject municipalities to section 1983 liability. Berkley v. Common Council of Charleston, 63 F.3d 295 (4th Cir. 1995) (en banc). Plaintif fs in that case contended that, in enacting the annual budget, Charleston's City Council denied plaintiffs a salary increase in violation of the First Amendment because plaintif fs had opposed the mayoral candidate supported by a majority of the Council. Id. at 302. The district court dismissed the plaintiffs' complaint, and the Fourth Cir cuit reversed. Id. at 303.5

In Goldberg v. Town of Rocky Hill , 973 F.2d 70, 74 (2d Cir. 1992), the Second Circuit held that the Town was not entitled to a legislative immunity defense for its elimination of the plaintiff 's job by budgetary, and hence legislative, action in alleged retaliation for his contr oversial views. Plaintiff was one of the Town's five supernumerary, part-time police officers. After the plaintiff publicly supported a controversial act by the Town's police chief, the Town Council "eliminated from the budget entir ely the positions of all supernumerary police officers." The District Court rejected the Town's absolute immunity defense and denied

_____

5. In a spirited dissent, Judge Wilkinson, joined by Judges Russell and Widener, argued that the imposition of section 1983 liability for legislative budget decisions was unsupported by the text of section 1983, by the canon of construction requiring clear statement, and by several policy grounds. Id. at 303–10.

its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. at 71. The Second Circuit affirmed. Id. at 74-75.

The Eleventh Circuit has also held a municipality liable under section 1983 for passing a budget ordinance that had abolished the plaintiff 's job and demoted him into a newly-created and lower-paying position. The plaintiff alleged that it did so in retaliation for the exercise of his First Amendment rights. Williams v. City of Valdosta, 689 F.2d 964, 969 (11th Cir. 1982). The Eleventh Circuit cited Monell's holding that a municipality "can be sued directly under S 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a[n] .. . ordinance . . . officially adopted and promulgated by that body's officers," id. (citing Monell, 436 U.S. at 690), and concluded that municipal liability could be established.

Hence, despite the reservations expressed by the District Court, we are satisfied and accordingly hold, as do Monell and Carver, that a municipality (in this case, Atlantic City) can be held liable for its unconstitutional acts in formulating and passing its annual budget.

V

As previously stated, in reviewing a motion to dismiss under Rule 12(b)(6), we must accept the allegations of the complaint as true and draw all reasonable infer ences in the light most favorable to the plaintiffs. Semerenko v. Cendant Corp., 223 F.3d 165, 180 (3d Cir. 2000); Nami, 82 F.3d at 65. Here, the essence of Langford's and Marsh's Complaint is that Atlantic City eliminated their school positions in retaliation for their political views and activities. They allege "that they were retaliated against by defendants, in violation of S 1983, for engaging in political activities and protected speech regarding matters of public concern, and that their political activities and protected speech were a substantial motivating factor in the decision by defendants to eliminate their jobs." Compl. P 2. They claim that Atlantic City deprived them of their First and Fourteenth Amendment rights when it, as one of the defendants, "under color of state law, eliminated and/or caused the

10

elimination of plaintiffs' positions with the Atlantic City Board of Education in retaliation for plaintiffs' political activities and/or plaintiffs' political campaigning and/or plaintiffs' vigorous and public criticism of and opposition to the political agendas, positions and endeavors of the said defendants regarding matters and issues of public concern." Id. PP 20, 92, 93, 96.

Throughout their Complaint, Langford and Marsh describe the opposing political forces, the political activities, and their political opposition to and public criticism of the Atlantic City administration, culminating in the passage of the budget that targeted their positions. For example, paragraph 44 of the Complaint recites that"Langford criticized and spoke out frequently, openly and publicly against defendants and their political agendas, positions and/or views regarding matters and issues of public concern." Id. P 44. Similarly, paragraph 46 alleges that "plaintiff Marsh criticized and spoke out openly, publicly and frequently against the City Council defendants, defendant Whelan and defendants' political agendas, positions and views regarding matters of public concern." Again, paragraph 50 includes allegations that "Langford and Marsh openly, publicly and vigorously opposed, rebuked and criticized the City Council defendants and defendant Whelan for positions they had taken, endeavors they had supported and/or agendas they had pr omoted on a variety of matters and issues of public concer n."

It is true that the Complaint is redundant in many respects, but it is clear that both Langfor d and Marsh have made no secret of their position that "Defendants seized upon and took advantage of their success in the 1998 elections as an opportunity to retaliate against and punish plaintiffs for their political campaigning, political beliefs and/or political opposition to and strong criticism of defendants and defendants' political agendas, positions and views; and defendants took retaliatory and punitive action against plaintiffs at their first opportunity following the May 12, 1998 elections." Id. P 56. Those allegations more than suffice for us to reverse the District Court's order of dismissal. If for the purpose of this opinion we, as we must, accept as true the allegations in the Complaint and the

11

inferences to be drawn therefrom, plaintiffs have alleged that they are entitled to relief because they were deprived of rights secured by the Constitution. Whether they can prove the allegations they have set forth in their Complaint is not for us to consider. It is sufficient at the Rule 12(b)(6) stage, that crediting the plaintiffs' allegations as we must, they are entitled to prevail against a motion to dismiss. Nami, 82 F.3d at 65.

VI

We will reverse the December 27, 1999 decision of the District Court and remand to the District Court for further proceedings in accordance with the for egoing opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit