**Jerome BOYKIN, Plaintiff**

v.

**SIENA HOUSE GAUDENZIA PROGRAM et al.,
Defendants**

**No. 3:CV 05 0614.**

United States District Court,
M.D. Pennsylvania.

Nov. 9, 2006.

**418**

Jerome Boykin, Somerset, PA, pro se.

Charlotte E. Thomas, Wolf, Block, Schorr & Solis–Cohen LLP, Philadelphia, PA, Gwendolyn T. Mosley, Office of Attorney General, Harrisburg, PA, for Defendants.

### MEMORANDUM AND ORDER

NEALON, District Judge.

Plaintiff, Jerome Boykin ("Boykin"), an inmate currently incarcerated in the State Correctional Institution, Somerset, Pennsylvania ("SCI–Somerset"), initially filed the above captioned civil rights action pur-

suant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania. The action was subsequently transferred pursuant to 28 U.S.C. § 1406(a), to this court. Boykin challenges his parole revocation and additionally seeks compensatory and punitive damages for Defendants' alleged violations of his First Amendment religious rights. On November 24, 2004, Plaintiff filed an amended complaint raising similar claims against Defendants Pennsylvania Board of Probation and Parole ("Board"); Board employees: Jill Hoover, Supervising Agent; Sherril Miller, Board Supervisor; and Craig Williams, District Director. (Doc. 1). Also named as Defendants are three employees of Gaudenzia, Inc.; Ed Saadi, Program Director at Siena House, Harrisburg, Pennsylvania and Jennifer and Melvin, Counselors at Siena House.

Pending before the court is a motion to dismiss filed on behalf of the Pennsylvania Board of Probation and Parole and its three employees: Jill Hoover, Sherril Miller, and Craig Williams (the "Commonwealth Defendants") and cross motions for summary judgment, filed on behalf of the employees of Gaudenzia, Inc.: Ed Saadi, and Counselors Jennifer and Melvin, ("Gaudenzia Defendants").[1] For the reasons that follow, the Commonwealth Defendants' motion to dismiss will be granted and summary judgment will be granted in favor of the Gaudenzia Defendants.

### I. Gaudenzia Defendants' Motion for Summary Judgment

Gaudenzia Defendants' filed a motion for summary judgment arguing, *inter alia,* that Boykin has failed to exhaust available

---

1. These motions were initially filed in the United States District Court for the Eastern District of Pennsylvania. However, the District Court ordered that the merits of the motions be held in abeyance pending transfer of Plaintiff's case for venue. (*See* Doc. 1, Memo and Order dated February 17, 2005). Thus, when the action was received in the Middle District Court, the motions were ripe for disposition.

administrative remedies. The motion is fully briefed and is ripe for disposition. Because Defendants' argument that Plaintiff has failed to exhaust administrative remedies is case dispositive, Defendants' other arguments will not be addressed. For the reasons set forth below, the Defendants' motion for summary judgment will be granted.

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment "... forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America,* 927 F.2d 1283, 1287–88 (3d Cir.1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler,* 986 F.2d 682 (3d Cir.

1993); *Clement v. Consolidated Rail Corporation,* 963 F.2d 599, 600 (3d Cir.1992); *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. *See Harter v. G.A.F. Corp.,* 967 F.2d 846, 851 (3d Cir.1992).

### B. Undisputed Facts

From the pleadings, declarations and exhibits submitted therewith, the following facts can be ascertained as undisputed.

In May, 2004, Plaintiff was paroled to the Sienna House in Harrisburg, Pennsylvania. (Doc. 1, Declaration of Edward Saadi, Siena House Program Director, at ¶ 21). The Sienna House is a residential treatment program guided by substance

abuse professionals for individuals with drug or alcohol addictions. *Id.* at ¶ 5. During his tenure at Siena House, the Plaintiff was permitted to observe Islamic religious practices. *Id.* at ¶ 24. However, he was not permitted to read from the Koran during treatment sessions, although he was permitted to read from the Koran during other times of the day. *Id.* at ¶ 25.

On July 13, 2004, Plaintiff was issued a Client Incident Report, based on the following:

> Encounter Group 1:pm–2:30 pm—During Encounter group Client Jerome Boykin's level of awareness was being pulled up as to some of his behaviors that are unacceptable. At this point, Jerome became very disrespectful toward Staff and Peers. Client was adamant about being resistant and was ask to leave the group and have respect on the prospect chair 2:25 pm Jerome refused to sit on the prospect chair and stated for staff to call his parole officer that he would rather go back to jail.

(Doc. 1, copy of Client Incident Report). At 2:30 pm, Siena House contacted Sherril Miller, Parole Board Supervisor, to explain the situation concerning Boykin. *Id.* At 3:00 pm, Jill Hoover, along with two other parole agents arrived at Sienna House and removed the Plaintiff for non-compliance with the program rules and regulations. *Id.* (Doc. 1, copy of Discontinuance of Service/Discharge Summary). That same day Plaintiff was committed to SCI–Camp Hill as a technical parole violator. (Doc. 1, copy of Warrant to Commit and Detain).

On September 20, 2004, Plaintiff filed the above captioned action in which he claims that while housed at Siena House, the Gaudenzia Defendants prevented him from freely exercising his religious beliefs, in violation of the First Amendment and the Establishment Clause. He further alleges that the Gaudenzia Defendants made comments about, or relating to, Plaintiff's religion. (Doc. 1, Amended Complaint).

### C. Discussion

 Section 1997e(a) of title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287 (3d Cir.2002). As such, the failure to exhaust available administrative remedies must be pleaded and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir.2002).

The Siena House has an established policy for grievances. (Doc. 1, Declaration of Edward Saadi, Program Director at Siena House, at ¶ 27 and Ex. A, copy of Client Grievance Procedure). A client at Siena House who is unhappy with an area of treatment is obligated to submit a request to discuss the issue with his or her primary counselor. *Id.* at ¶ 18. If the problem or concern is not resolved to the client's satisfaction, the client must next request to speak with the primary counselor's supervisor. *Id.* at ¶ 29. If the supervisor does not resolve the problem satisfactorily, the client is then required to request a meeting with the Program Director. *Id.* Finally, if the problem contin-

ues, the client must submit a written description of the problem to the Gaudenzia's Central Region Director. *Id.* at ¶ 30.

There are no grievances written by the Plaintiff on file in the Siena House. *Id.* ¶ 33. Nor is there any evidence of record that Plaintiff ever requested a meeting with the Program Director at Siena House. *Id.* ¶ 32. To the extent that Plaintiff claims that he me with two counselors regarding his religious concerns, there is no evidence of record of such meeting. In any event, the grievance procedure contemplates several tiers of review and the grievance review system is not exhausted when an inmate files an initial grievance and then takes no other action through established channels when a grievance is not resolved to his satisfaction. Plaintiff's next step would have been to appeal the counselor's decision, or lack of one, to the primary counselor's supervisor, the Program Director, and then file a final appeal to the Gaudenzia's Central Region Director. Plaintiff offers no evidence of this. Such failure to exhaust is fatal to Plaintiff's claim. Thus, by not pursuing the appropriate administrative process with respect to his claims, Plaintiff is precluded from litigating such claims.

█ In *Spruill v. Gillis,* 372 F.3d 218, 230 (3d Cir.2004), the Third Circuit Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." "To exhaust remedies, a prisoner must file complaints and appeals in the place, *and at the time,* the prison's administrative rules require." *Spruill,* 372 F.3d at 231 (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002) (emphasis added)).

In this case, the record clearly discloses that Boykin failed to properly pursue his available administrative remedies at Siena House. Thus, he has sustained a procedur-

al default. Boykin offers no justification for his failure to complete the grievance procedure available at Siena House. Thus, he is now foreclosed from litigating this claim in this Court. *See Berry v. Kerik,* 366 F.3d 85, 86–88 (2d Cir.2004) (affirming the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances); *Ross v. County of Bernalillo,* 365 F.3d 1181, 1186 (10th Cir.2004) (court, embracing the holding in *Pozo,* stated that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."); *Pusey v. Belanger,* No. Civ. 02–351, 2004 WL 2075472 at *2–3 (D.Del.2004) (applying *Spruill,* court dismissed inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance). Accordingly, the Gaudenzia Defendants are entitled to judgment in their favor.

## II. Commonwealth Defendants' Motion to Dismiss

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. *See* FED. R.CIV.P. 12(b)(6). When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000) (citing *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996)). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." *Id.* The court will not

dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

"In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The court, however, need not accept "bald assertions" or "legal conclusions." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Likewise, the court need not "conjure up unpled allegations or contrive elaborately arcane scripts" to breathe life into an otherwise defective complaint. *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). Consistent with these principles, the court must grant leave to amend before dismissing a complaint that is merely deficient. *See Shane v. Fauver,* 213 F.3d 113, 116–17 (3d Cir.2000).

### B. Facts alleged in Complaint

Plaintiff states that on May 13, 2004, he was placed in the Siena House, Harrisburg, Pennsylvania, by the Pennsylvania Board of Probation and Parole, to serve ninety (90) days as a condition of his parole. Plaintiff claims that Defendants "employ[ed] by Siena House discriminated against the Plaintiff's religious beliefs at several times and dates between the months of May and July of 2004, prior to the Defendants' discriminatory and retaliatory discharge of Plaintiff from program." (Doc. 1, Amended complaint at ¶ 2).

Specifically, Plaintiff states that defendant Saadi "several times impeded Plaintiff's right to practice his religion via stating to the Plaintiff that Plaintiff does not have a right to practice his religion or religious beliefs at Siena House, and by preventing Plaintiff at several times from performing prayers and from attending Muslim prayer service on Fridays." *Id.* at ¶ 3. Defendant also stated "that Siena House Program does not have any room (tolerance) for Plaintiff's religious practices and beliefs and, that Plaintiff's religious beliefs and practices were secondary in nature." *Id.* Plaintiff avers that the "Siena House Program contains religious contents different from and in negation to the Plaintiff's beliefs" and that Defendant Saadi, "compelled Plaintiff to embrace the Siena House's religious contents by stating to the Plaintiff that if he did not comply to program's religious contents then Plaintiff would be sent to SCI–Camp Hill for failure to complete program'." *Id.* at ¶ 4. Plaintiff claims that Defendant Saadi "eventually expelled Plaintiff from Siena House Program in retaliation against the Plaintiff for having filed several grievances protesting his right to practice his religion and his right to be free from the imposition of Siena House religious programs." *Id.*

Plaintiff asserts further that Defendant Jen was Plaintiff's counselor at Siena House and that he "spoke repeatedly with Defendant Jen regarding the imposition of Siena House's religion-contents upon Plaintiff and the interference and restriction placed on Plaintiff's practice of his own beliefs." *Id.* at ¶ 6. Defendant Jen allegedly responded to Plaintiff's concerns by stating that " 'Plaintiff must participate in program's religion-contents and that Plaintiff's belief and religious practice is going to get him in trouble' and that at numerous times, Plaintiff pleaded with Defendant Jen to contact his parole agent for the purpose of seeking re-placement in another program that contained no religion-contents and impermissible impediment and restriction on Plaintiff's right to practice his faith." *Id.* Plaintiff concludes that "Defendant Jen eventually participated in the expulsion of Plaintiff from Siena

House Program to SCI–Camp Hill based on impermissible grounds and in response to Plaintiff's grievance which redressed the impermissible restriction on his right to practice his religion and, Plaintiff's indifference and objection to the imposition of Siena House religion-contents." *Id.*

Plaintiff contends that Defendant Melvin, a Siena House counselor "stated to Plaintiff on several occasions that 'Plaintiff's objections to Siena House religion-contents coupled with Plaintiff's Islamic practice and faith are going to get him expelled from program and placed in SCI–Camp Hill, State Correctional Institution.'" (Doc. 1, Amended complaint at ¶ 8). Plaintiff maintains also that he "repeatedly appealed to Defendant Melvin, to exempt Plaintiff's participation in NA and AA programs in addition to other religion-contents contained in Siena House program which negated Plaintiff's faith and beliefs and to remove the impermissible restriction and impediment of Plaintiff's five (5) daily prayers." *Id.* at ¶ 9. Melvin allegedly "responded repeatedly 'That Plaintiff's faith and practices are secondary and that Siena House is not responsible for facilitating prayer times and prayer service for Muslims on Fridays'." *Id.* Finally, Plaintiff claims that Defendant Melvin "called Plaintiff a 'freak' based on Plaintiff's attitude toward program," which "Plaintiff filed a grievance in response and was told by Defendant Melvin 'that Plaintiff would be expelled from program'." *Id.* at ¶ 11. Thus, Plaintiff concludes that Defendant Melvin "was substantially responsible for Plaintiff's expulsion from program and placement in SCI–Camp Hill on July 13, 2004." *Id* at ¶ 12.

The remainder of Plaintiff's allegations are against the employees of the Pennsylvania Board of Probation and Parole ("Board"). He argues that Sherril Miller, Board Supervisor, "mandated Plaintiff to a ninety (90) days parole sanction to Siena House NA and AA program containing religion-contents" even though "Defendant Miller is familiar with the decision of the 3rd Cir. in *Rauser v. Horn*, cite as 241 F.3d 330 (3d Cir.2001), which prohibits the Pennsylvania Parole Board from compelling participation in NA, AA and other programs containing religious based contents." (Doc. 1, Amended Complaint at ¶ 14). Plaintiff further alleges that "Defendant Miller imposed a technical violation of parole status upon Plaintiff and ordered that Plaintiff be confined to SCI–Camp Hill based on the impermissible expulsion of Plaintiff from Sienna House." *Id.* Thus, Plaintiff concludes that "Miller violated plaintiff's First Amendment right and the Establishment Clause, and punished the Plaintiff via confinement based upon the Defendant's violation of state and federal law." *Id.*

Plaintiff states that Defendant Jill Hoover, Board Agent, "was responsible for arresting Plaintiff at Sienna House and transporting Plaintiff to SCI–Camp Hill, based on Defendants' impermissible discharge of Plaintiff from Siena House." (Doc. 1, Amended Complaint at ¶ 16). Finally, with respect to Defendant Craig Williams, District Director, Plaintiff avers that he "incorporates the same claim and relief against Defendant Williams as against Defendant Miller." *Id.* at ¶ 17. For relief, Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

### C. Discussion

 The United States Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). "Because an action attacking the validity of parole proceedings calls into question the fact and duration of confinement, it must satisfy the *Heck* element." *McGrew v. Texas Board of Pardons & Paroles,* 47 F.3d 158, 161 (5th Cir.1995). *See also Jackson v. Vannoy,* 49 F.3d 175, 177 (5th Cir.1995) (*Heck* applies to challenges to revocation of parole); *Benson v. New Jersey State Parole Board,* 947 F.Supp. 827, 833 (D.N.J.1996) (Applying *Heck,* Plaintiff's § 1983 claim, premised on the denial of a timely parole hearing and the allegedly erroneous calculation of his parole eligibility date, held "not cognizable, unless Benson can prove that his sentence, or more specifically, the calculation of the duration of his sentence, has been invalidated...").

A decision in this case that the Plaintiff is entitled to damages due to the Commonwealth Defendants' revoking Plaintiff's parole based on the "impermissible expulsion of Plaintiff from Sienna House," would imply that the Plaintiff is being improperly incarcerated and would bring into question the validity of his parole revocation, which in turn goes to the fact or duration of his confinement. Plaintiff cannot proceed with this § 1983 action for damages until he has established, first by resort to state court remedies, that his confinement for parole revocation was improper. There is no indication, however, that there has been a prior adjudication pertaining to the alleged unlawful revocation of Plaintiff's parole. Thus, it is appropriate to dismiss Plaintiff's claim for damages as legally frivolous, since he cannot, under *Heck,* maintain a cause of action for unlawful imprisonment until the basis for that imprisonment—in this case his parole revocation—is rendered invalid. *Semkew v. Walsh, et al.,* Civil No. 94–0673 (M.D.Pa. July 27, 1994) (McClure, J.) (dismissal of complaint as frivolous pursuant to 28 U.S.C. § 1915(d) where, based on *Heck v. Humphrey,* the plaintiff has no cause of action pursuant to § 1983).

■■■ Further, to the extent that Plaintiff seeks to challenge the underlying validity of his parole revocation, it is well-settled that prisoners cannot use § 1983 to challenge the fact or duration of their confinement or to seek immediate or speedier release. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[2] Finally, in order to state a viable claim under 42 U.S.C. § 1983, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir.1976). Although Plaintiff alleges that the Commonwealth Defendants violated his First Amendment rights, his complaint is completely devoid of any allegations that they participated in, or limited, his ability to practice his religion while he was housed in the Siena House. They revoked his parole based on the information from the

2. Plaintiff is free, however, to pursue his claims through a properly filed state court action. In the case of a parole violator, such as Plaintiff, he must first challenge the Board's decision by filing an administrative appeal, *see* 37 Pa.Code § 73.1(b)(1), then by an appeal to the Pennsylvania Commonwealth Court, and then by a petition to the Pennsyl- vania Supreme Court for allowance of appeal. *See McMahon v. Pennsylvania Board of Probation & Parole,* 504 Pa. 240, 470 A.2d 1337 (1983); *Evans v. Pennsylvania Dep't of Corr.,* 713 A.2d 741 (Pa.Commw.1998); *St. Clair v. Pennsylvania Board of Probation & Parole,* 89 Pa.Cmwlth. 561, 493 A.2d 146 (1985).

officials at Sienna House. Thus, Plaintiff's amended complaint fails to set forth any personal involvement by the Commonwealth Defendants and their Motion to Dismiss will be granted. An appropriate Order will be entered.

### ORDER

AND NOW, THIS 9th DAY OF NOVEMBER, 2006, IT IS HEREBY ORDERED THAT:

1. The motion to dismiss filed on behalf of the Commonwealth Defendants (Doc. 1) is **GRANTED**.

2. The motion for summary judgment (Doc. 1), filed on behalf of the Gaudenzia Defendants is **GRANTED** Summary Judgment is hereby entered in favor of the Gaudenzia Defendants and against the Plaintiff.

3. Plaintiff's motion for appointment of counsel, (Doc. 76) is **DISMISSED** as moot.

4. The Clerk of Court is directed to **CLOSE** this case.

5. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.