

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-1996

# Nami v. Fauver

Precedential or Non-Precedential:

Docket 95-5365

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Nami v. Fauver" (1996). *1996 Decisions.* Paper 203.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/203

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 95-5365

————————


ROBERT NAMI;
MAURICE THOMPSON;
BART FERNANDEZ;
KENNETH THOMPSON,

KENNETH B. THOMPSON,
Appellant

v.

WILLIAM H. FAUVER, COMMISSIONER;
JOSEPH E. BUTLER, ADMINISTRATOR;
WILLIE BOGGAN, ASST. SUPERINTENDENT;
PREM SINHA, LAW LIBRARIAN

————————————————————————————————————

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 94-cv-06083

————————————


Submitted Pursuant to Third Circuit LAR 34.1(a)
November 27, 1995

Before:  Stapleton, Nygaard and Lewis, Circuit Judges

(Opinion Filed  April 25, 1996)
             -------------

BART FERNANDEZ, PRO SE
KENNETH B. THOMPSON, PRO SE

DIANNE M. MORATTI, ESQUIRE
Office of Attorney General of
New Jersey
Division of Law
Richard J. Hughes Justice Complex
Trenton, NJ 08625

———————————

OPINION OF THE COURT

———————————

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Kenneth Thompson appeals <u>pro</u> <u>se</u> from the district court's order
complaint.  We will reverse the order and remand the cause to the district
further proceedings consistent with this opinion.

I.

On December 6, 1994, Robert Nami, Maurice Thompson, Bart Fernande
Thompson filed a <u>pro</u> <u>se</u> complaint under 42 U.S.C. § 1983, alleging that the
subjected to cruel and unusual punishment and denied access to the courts.
plaintiffs were inmates housed in protective custody[1] in the Administrative
Supervision Unit (or "Unit") at the Wagner Youth Correctional Facility in B
Jersey.  The defendants are: William Fauver, Commissioner of the New Jersey
Corrections; Joseph Butler, Wagner's Administrator; Willie Boggan, the Assi
Superintendent of the Unit; and Prem Sinha, the law librarian at Wagner.  T
seek declaratory and injunctive relief, and compensatory and punitive damag

The defendants moved under Fed. R. Civ. P. 12(b)(6) to dismiss on
that: the complaint does not allege specific conduct by the defendants that
plaintiffs; the defendants cannot be held liable under § 1983 on the basis
superior; and the defendants are state officials who are being sued for dam
official capacities and are therefore immune from suit under the Eleventh A
district court found that to the extent the plaintiffs sought injunctive re
defendants were not immune under the Eleventh Amendment, but agreed that th
failed to specify which defendants were responsible for the adoption and ex

———————————

[1]     Protective custody inmates are those whose well-being might be im
they to remain in the general population.

2

various policies and practices complained of.  Rather than allowing the pla

amend their complaint to correct that deficiency, the district court grante

dismiss.

## II.

Because the district court's final order granted the defendants'

dismiss the complaint under Fed. R. Civ. P. 12(b)(6), our review is plenary

determine whether, under any reasonable reading of the pleadings, the plain

entitled to relief, and we must accept as true the factual allegations in t

and all reasonable inferences that can be drawn therefrom.  <u>Holder v. City</u>

987 F.2d 188, 194 (3d Cir. 1993).  The complaint will be deemed to have all

facts if it adequately put the defendants on notice of the essential elemen

plaintiffs' cause of action.  Since this is a § 1983 action, the plaintiffs

to relief if their complaint sufficiently alleges deprivation of any right

Constitution.  <u>Id.</u>  In considering a Rule 12(b)(6) motion, we do not inquir

plaintiffs will ultimately prevail, only whether they are entitled to offer

support their claims.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  The di

order granting the defendants' motion to dismiss will be affirmed only if i

the plaintiffs could prove no set of facts that would entitle them to relie

<u>Gibson</u>, 355 U.S. 41 (1957).

## III.

### <u>Cruel and Unusual Punishment</u>

The plaintiffs' claim of cruel and unusual punishment is based on

allegations:

1. Inmates at the Unit are "double celled," housed two to a singl

foot cell with only one bed, so that one of them must sleep on the floor by

Cells have solid doors with only a four inch wide window for cell inspectio

difficult to summon help.  Inmates often share cells with others who suffer

psychiatric problems and/or who are violent felons, and non-smokers must of

smokers. Floor space is minimal, effectively confining inmates to their bed

ventilation system often shuts down for hours at a time.  Double celling ha

rapes and other assaults, as well as psychological stress.  Inmates who ref

up" have been punished with periods of administrative segregation and loss

2. Inmates must spend 24 hours a day in their cells except for ou recreation, visits and half-hour to one-hour job assignments.

3. Out of cell recreation is limited to one two-and-a-half hour p per week, in contrast to the seven day per week policy enjoyed by the gener and protective custody inmates in other facilities.  Moreover, during outdo inmates are denied bathroom access, resulting in unsanitary conditions in t yard.  Those who cannot wait to use the bathroom inside risk punishment.

4. Access to drug and alcohol programs required by the parole boa and educational programs, is more restricted for inmates in protective cust inmates in the general population.  General population inmates work at the though a statute prohibits inmates not under protective custody from enteri protective custody area.

5. When transported to other locations -- for example, to visit t inmates must wear a painful device, the "black box," which is so uncomforta inmates are deterred from seeking medical or dental help; general populatio apparently do not have to wear this device, nor do inmates in protective cu facilities.

6. One of the plaintiffs, Kenneth Thompson, alleges that his requ dentist and an eye doctor have been ignored.

Rather than examining the plaintiffs' allegations concerning the their confinement as a whole, the district court split these allegations in categories. First, the court analyzed the double celling allegations, infer

v. Chapman, 452 U.S. 337 (1981), that double celling is not per se a consti

violation, and concluded that the plaintiffs failed to state a claim in tha

Second, the court addressed the allegation that there have been increased r

assaults, finding that the claim based upon these allegations lacked merit

plaintiffs failed to show "deliberate indifference," citing Young v. Quinla

351, 360 n.22 (3d Cir. 1992). Finally, the court treated the remaining Eig

allegations as amounting to an equal protection claim, based on a compariso

plaintiffs' treatment with that of the general population of the prison. I

claim to likewise be without merit.

We conclude that the district court erred. While Rhodes may stan

proposition that double celling does not per se amount to an Eighth Amendme

it does not stand for the proposition that double celling can never amount

Amendment violation. The Supreme Court held only that, under the circumsta

particular case, the double celling in question did not violate the plainti

Amendment rights. The Court noted that

> No static `test' can exist by which courts can determine whether
> conditions of confinement are cruel and unusual, for the Eighth
> Amendment must draw its meaning from the evolving standards of de
> that mark the progress of a maturing society.

Id. at 346 (citation and internal quotations omitted). The court went on t

> conditions must not involve the wanton and unnecessary infliction
> pain, nor may they be grossly disproportionate to the severity of
> crime warranting imprisonment. . . . [Conditions may constitute c
> and unusual punishment if] they result[] in unquestioned and seri
> deprivations of basic human needs . . . , [which] deprive inmates
> the minimal civilized measure of life's necessities . . . .

Id. at 347.

In other words, it is implicit in Rhodes that double celling can

Eighth Amendment violation if combined with other adverse conditions. Thus

Owens, 907 F.2d 418 (3d Cir. 1990), we noted that, to determine whether con

confinement violate the Eighth Amendment, it is necessary to examine the to

5

conditions at the institution, and we held that double celling at SCI Pitts

the Eighth Amendment because of those conditions. <u>Id.</u> at 426-427. Relevan

considerations include the length of confinement, the amount of time prison

in their cells each day, sanitation, lighting, bedding, ventilation, noise,

rehabilitation programs, opportunities for activities outside the cells, an

and functioning of basic physical facilities such as plumbing, ventilation,

<u>Id</u>. at 427. Here, the allegations in the complaint raise another significa

consideration; that plaintiffs were subject to sexual assaults, and that th

by failing to protect plaintiffs adequately, were deliberately indifferent

potential for this type of harm. If proven, these allegations, irrespectiv

the harm resulted from double celling or other conditions of the confinemen

establish deliberate indifference as contemplated by <u>Rhodes v. Chapman</u>.

As in <u>Rhodes</u>, courts finding double celling permissible have emph

general prison conditions were otherwise adequate. <u>Id</u>. We stress that the

<u>Rhodes</u> were different in many ways from those in the case before us (and co

different from the grim conditions related in <u>Tillery</u>). The cells in <u>Rhode</u>

Nonetheless, cells housing two inmates had two-tiered bunk beds, each cell

air circulation vents and a built-in radio, one wall consisted only of bars

6:30 a.m. and 9:30 p.m. inmates had access to "dayrooms" (designed to be co

living room at home, each included a television, card tables and chairs).

The district court failed to analyze the relevant consideration l

Nor did the court discuss double celling in the overall context of prison c

that extent the district court erred.[2] Although the complaint alleged that

in rapes and other assaults was a result of double celling, the district co

---

[2] Since under <u>Tillery</u> the plaintiffs' other Eighth Amendment claims
unavoidably part of the analysis of the double celling issue, we need not a
separately in detail here.

6

this allegation separately.  The court found that the plaintiffs did not st

because they had failed "to indicate any conduct by the defendants which co

`deliberate indifference.'" (Dist. Ct. at 9, citing <u>Young v. Quinlan</u>, 960 F

n.22 (3d Cir. 1992)).  Here, the court also erred.

In <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991), the Supreme Court held

establish an Eighth Amendment violation an inmate must allege both an objec

that the deprivation was sufficiently serious -- and a subjective element –

official acted with a sufficiently culpable state of mind, i.e., deliberate

It cannot be wholly determined from the record whether in this ca

officials actually displayed deliberate indifference.  Nonetheless, this co

actually states that "letters have been written to the [administration] con

matters set forth in the complaint.  All requests for administrative remedi

refused."  (Complaint at 3.)  This suggests that the defendants here were o

by plaintiffs' reports of rape, violence and the other conditions alleged i

complaint.  Although, by itself, such notice may not equal proof of deliber

indifference, it nevertheless directly contradicts the district court's tac

which has no support in the record, that plaintiffs could prove no set of f

either show deliberate indifference or otherwise entitle them to relief.

Finally, the district court erred in its consideration of the pla

remaining Eighth Amendment allegations.  The court stated that

> there is no support for the assertion that plaintiffs' constituti
> rights are being violated by denying them the same `rights and
> privileges' afforded to inmates in the general population and thi
> Court defers to the judgment of the prison officials in adopting
> executing policies and practices that they believe, in their
> discretion, are needed to preserve internal order and to maintain
> institutional security.

(Dist. Ct. at 9-10.)  That may be true (although, since the defendants did

opportunity to explain the justifications for these "policies and practices

7

assumption that they are legitimate is perhaps premature); however, the pla

to have raised these allegations as part of their Eighth Amendment claim, n

equal protection claim.  For example, the plaintiffs complain about use of

not simply because general population prisoners are not subjected to them,

they are so uncomfortable that they deter inmates from seeking medical and

For the reasons stated above, these remaining allegations should have been

along with the issue of double celling, and should at least have been consi

of the plaintiffs' Eighth Amendment claims.

Thus, with regard to the plaintiffs' Eighth Amendment claims, we

the district court erred.  Based upon the record before us, we cannot say t

plaintiffs would be unable to prove that prison conditions were objectively

and that prison officials were deliberately indifferent to plaintiffs' plig

that the district court entertained, but rejected (Dist. Ct. at 5), the pos

plaintiffs may be able to satisfy some deficiencies in their original plead

an amended complaint.  Plaintiffs may be able to allege in an amended compl

example, sufficient facts to support a finding that some defendants display

indifference to certain harms, or that all officials were deliberately indi

possibility that the conditions under which they housed the plaintiffs sign

increased the possibility of such well-known harms as prison rape.

IV.

<u>Access to the Courts</u>

The plaintiffs' denial of access to the courts claim is based on

allegations.  Protective custody inmates are denied access to paralegals or

trained in law who could assist them with drafting legal papers.  Paralegal

available to protective custody inmates facing disciplinary charges, while

refuses to help protective custody inmates prepare habeas corpus petitions

complaints. Moreover, Sinha has attempted to frustrate the plaintiffs in th

8

delaying return of documents and failing to make copies of legal documents.

custody inmates are effectively prevented from helping each other by a poli

them from talking to each other through the doors and passing items to betw

those who violate that policy risk disciplinary action.  In addition, priso

with a Catch 22-style problem: in order to obtain access to legal materials

submit written requests for specific materials; however, they cannot effect

because they lack access to the very legal materials that would advise them

materials to request.  The plaintiffs also allege that everyone who has att

a civil complaint to attack these procedures has been transferred.

As we stated in <u>Abdul-Akbar v. Watson</u>, 4 F.3d 195, 204 (3d Cir. 1

standard in resolving a claim of denial of access to the courts is

> whether the mix of paralegal services, copying services and avail
> research materials can provide sufficient information so that a
> prisoner's claims or defenses can be reasonably and adequately
> presented.

As with claims involving double celling, in addressing a claim of denial of

courts "each legal resource package must be evaluated as a whole on a case-

<u>Id.</u> at 203.

However, just as the district court failed to address the plainti

celling claims as a whole, in addressing their claim of denial of access to

district court only analyzed one allegation, denial of access to paralegals

court addressed it by relying on defendant Boggan's affidavit in an unrelat

which he states that paralegals are available on written request to help in

legal problem or lawsuit.  Because the plaintiffs did not allege that they

written requests, the district court held that they had failed to state a c

of access to the courts.

9

The district court erred here as well.  In choosing to believe Bo

affidavit, the court failed to take the allegations in the complaint as tru

in considering a motion to dismiss under Rule 12(b)(6).  In addition, the c

address the remaining allegations at all.  Since the plaintiffs' allegation

evidently false, and since their allegations do not facially indicate that

could not state a claim, the district court erred by granting the defendant

dismiss.

V.

In conclusion, the district court should not have granted the def

to dismiss under Rule 12(b)(6). We will reverse the judgment of the distric

remand the matter for further proceedings consistent with this opinion.