

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-29-2005

# Bradshaw v. Middletown

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2933

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Bradshaw v. Middletown" (2005). *2005 Decisions.* Paper 646.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/646

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2933

———

WAYNE BRADSHAW, ET AL.

Michael Rubino, Gerald Weimer,
Nina Rubino, Christine Weimer,

Appellants

v.

TOWNSHIP OF MIDDLETON, ET AL.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-05225)
District Judge: Honorable Hon. Mary Little Cooper

———

Submitted June 6, 2005
Before: FUENTES, VAN ANTWERPEN, and BECKER, Circuit Judges.

(Filed August 29, 2005)

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Plaintiffs Michael Rubino and Gerald Weimer ("the officers") appeal from an order of the District Court granting the defendants' motion to dismiss made pursuant to Fed. R. Civ. Pro. 12(b)(6). The case before us is the remnants of a confusing complaint filed by six plaintiffs– four officers plus the wives of Weimer and Rubino– asserting various causes of action against Defendants Township of Middletown ("Township"), Township of Middletown Police Department ("Police Department"), Public Safety Director Robert Czech ("Czech"), Police Chief John Pollinger ("Pollinger"), Police Lieutenant Robert Morrell ("Morrell"), and others. Only the claims of Rubino and Weimer are at issue before us. Rubino and Weimer contend that the District Court erred in dismissing their allegations under 42 U.S.C. § 1983 that the defendants violated the officer's First Amendment rights and failed to train its employees.

We affirm substantially for the reasons expressed in the thorough and persuasive opinion of the District Court. We add the following to underscore our own agreement with that decision.

## I. Facts and Procedural History

The facts and procedural history are complicated and adequately set forth in the District Court opinion. Because we write only for the parties, we only recount the most necessary of facts. The facts forming the basis of the appeal are related to two discrete and disconnected events which the officers suggest are somehow linked.

The first incident, concerns primarily Rubino, and involves the officers' activities around September 11, 2001. On September 11, Rubino and other officers were directed by Chief Pollinger to go to New York City on to assist with the rescue efforts. On September 12, however, Pollinger declined to authorize Middletown police officers to assist in New York City because he believed no assistance was needed from the Middletown police. On September 13, Rubino informed Pollinger that assistance was needed in New York City and that he wanted to go to New York to help. Pollinger instructed Rubino that Middletown police officers were not to go to New York City, to which Rubino replied that he would take a personal day off from work in order to go assist. Pollinger initially said that he would not allow Rubino to use his personal day for that purpose, but eventually relented when he realized Rubino was intent on going and allowed a small group of officers, including Rubino and Weimer to go to New York City. On September 13 , a police sergeant called Rubino at Ground Zero to inform him that Pollinger was ordering all Middletown officers to return. Rubino protested to the sergeant that all the officers were being utilized, and the sergeant passed along the information to Pollinger. Pollinger did not change his mind and insisted that all the Middletown officers leave. Rubino worked at Ground Zero until 4 AM on September 14.[1] On September 14th, Rubino was summoned to Pollinger's office upon reporting to

[1]Because the record does not indicate when the sergeant spoke to Rubino, we are unable to determine whether Rubino disobeyed Pollinger's order to return to Middletown by staying at Ground Zero until 4 AM.

work.  At that time, Pollinger stated no officers could assist even during their off-duty time.  Pollinger further ordered that no officer should wear a badge or any other item identifying him as a Middletown police officer.  At some point during this conversation, Rubino commented that Morrell misrepresented the Middletown Police Department's role in the rescue efforts of September 11 and Pollinger became agitated.

Rubino alleges that he was retaliated in the following ways for his actions related to September 11:

 Effective September 28, 2001, with three days notice, Rubino was relieved of his command and transferred to the Patrol Division as a shift commander.  Pollinger would not discuss the transfer with Rubino nor with Rubino's superior officer.  Czech was quoted in a newspaper as stating that Rubino had been reassigned because he had not complied with the directives of a supervisor.  As a result of this transfer, Rubino had to purchase a car because he was no longer entitled to one from the Police Department as was the case when he was a Detective Lieutenant.

In January 2002, a computer Rubino had ordered was missing and nearly $800 was taken out of Rubino's pay without notice or a hearing.  Rubino was charged with neglect of duty, but these charges were dismissed in arbitration.

In Spring of 2002, Pollinger added an addendum to Rubino's review claiming that he was unprofessional and insubordinate without notifying Rubino or his supervisor contrary to the rules.

At some unspecified date, Rubino requested to attend some training classes and his requests were denied.  He specifically noted that his request to attend the Narcotics Officer Convention, which he attended every year since 1984, was denied.

The Police Department did not pay his dues for the National Narcotics Association, in contravention of a fifteen year practice doing so.

Appellant Br. at 15-17.

The second incident, concerns primarily Weimer, and involves inappropriate conduct on the part of Morrell. On or about April 20, 2002, Morrell sent a package containing horse manure and a threatening note to the homes of Weimer and Rubino and two other officers. Weimer went to Morrell's residence to return the box and to complain, but Morrell did not answer the door. It appears that Weimer left the box at Morrell's residence. Morrell contacted the police and accused Weimer of criminal mischief while omitting that he himself had originally sent the package. For a time period, Weimer was the subject of an Internal Affairs Investigation until Morrell admitted to originally sending the package. Almost a month later, in May 2002, Morrell, in his pick-up truck, followed Weimer through various Township streets for no apparent reason. Weimer documented and reported this incident in a memo to Detective Lieutenant Michael Cerame. Weimer and the other recipients eventually made a formal request for an Internal Affairs Investigation. Shortly thereafter, Pollinger suggested that the Officers seek counseling.

## II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal. This Court exercises plenary review over a District Court's grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Nami v. Fauver, 82 F.3d 63, 65. We take all factual allegations and reasonable inferences as true and views them in the light

most favorable to the Plaintiff.  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  Any questions of law presented by this appeal are reviewed de novo.  United States v. Hendricks, 395 F.3d 173, 176 (3d Cir. 2005).

## III. Discussion

The officers allege violations of 42 U.S.C. § 1983 which provides a cause of action against a person who, acting under color of state law, deprives another of a constitutional or federal right.  Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division, 411 F.3d 427, 433 (3d. Cir. 2005)  Thus, to state a claim under § 1983, the officers must demonstrate "(1) of what constitutional or federal right [they were] deprived, and (2) how [they were] deprived of that right under color of state law.  Id.[2]

## A. First Amendment

We first address the officers' claim that their First Amendment rights were violated because they experienced retaliation for engaging in protected speech.  Rubino claims he experienced retaliation for expressing concern over the Police Department's response to the attacks of September 11, 2001.  Weimer claims he experienced retaliation for expressing his concern over Morrell's behavior.  A public employee's retaliation

---

[2]At the outset, the District Court dismissed Morrell as a defendant because while there were ample allegations of his misfeasance, the Amended Complaint does not allege that Morrell retaliated against the plaintiffs for exercise of protected speech.  The Officers challenge this ruling in their reply brief, but we find that the District Court correctly concluded that the Amended Complaint did not sufficiently alleged a § 1983 claim against Morrell for First Amendment violations.

claim for engaging in protected First Amendment activity is evaluated under a three-step process: (1) first, the plaintiff must establish the speech in question was protected in that it involved a matter of public concern, and the public interest favoring the expression of that speech must outweigh any injury the speech could cause to the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," (2) second, the plaintiff must show that protected activity was a substantial or motivating factor in the alleged retaliatory action, (3) finally, the public employer can rebut the claim by demonstrating that the same decision would have been reached even in the absence of the protected conduct.  Baldassare v. New Jersey, 250 F.3d 188, 194-95 (3d Cir. 2001) (citing Pickering v. Board of Educ. of Twp. High Sch. Dist. 205, Will County, 391 U.S. 563, 568 (1968)).  Both of the officers' First Amendment claims fail to satisfy the first step.

## 1. Rubino

We take no issue with Rubino's contention, and the District Court's conclusion, that Rubino's conversation with Pollinger expressing concern over the Police Department's response to September 11 was a matter of public concern.  Rubino's concern, however, took the form of challenging Pollinger's orders– persistently, flagrantly, and in front of others.  We agree with the District Court that Rubino's expression of his concern was outweighed by the public interest in maintaining obedience, order, and discipline in the police department, especially in the time of crisis

that was the time period immediately following the attacks of September 11. Accordingly, we discern no error with the District Court's dismissal of Rubino's First Amendment claim.[3]

**2. Weimer**

Weimer's argument that his First Amendment rights were violated is similarly unpersuasive. Weimer fails to show how his memo to Cerame, set out in the facts, regarding Morrell's behavior constitutes speech that is a "matter of public concern" as opposed to speech asserting Weimer's own interests and issues. Moreover, the only act committed by Pollinger or any others in the police department directed towards Weimer was the suggestion that Weimer, and the other officers, seek counseling. Morrell cannot credibly construe Pollinger's suggestion to seek counseling as retaliation when the officers claim they were traumatized by Morrell's actions. We therefore affirm the District Court's order with respect to the dismissal of Weimer's First Amendment claim.

### B. Failure to Train

Finally, the officers argue that the Township is liable under § 1983 for failing to train, supervise, and monitor its employees. The District Court correctly noted that a

---

[3]The officers' brief hints that Rubino also has a first amendment retaliation claim arising out of the incident with Morrell. This is wholly unpersuasive. While the Amended Complaint maintains that Rubino joined the other officers in requesting an internal affairs investigation of the incident with Morrell, the complaint does not identify speech specifically made by Rubino with respect to this request, nor is there any link made between the alleged retaliatory acts Rubino suffered and any speech he engaged in with respect to Morrell's activities.

municipality can be held liable for failing to train its employees when the municipality's failure shows "a deliberate indifference to the rights of its inhabitants," Canton v. Harris 489 U.S. 378, 389 (1989) (internal quotation marks omitted), and that no such deliberate indifference on the part of the municipality was alleged.

The entirety of the Officers' allegations with regard to this claim is as follows:

Defendant/Municipality. . . failed to properly train and supervise its employees and agents and, as such, the violations that resulted, along with failure to train, violate 42 U.S.C. § 1983. Defendant/Municipality failed to train its agents to take proper investigatory and remedial action relating to the officers' fear for their safety in their workplace as detailed [in previous paragraphs in the Amended Complaint].
This action violates 42 U.S.C. § 1983 because their actions violate the Constitution of the United States, denying Plaintiff of life, liberty and property and the pursuit of happiness, and hence, 42 U.S.C. 1983.

Appellant App. Vol II. at 107(a).

In the Amended Complaint, the Officers did not identify any examples of specific training that the Township failed to provide.[4] If the Officers were unable to provide specific examples of training needed, it cannot be said that the need for more or additional training is so obvious as to constitute deliberate indifference on the part of the

---

[4]In the briefs submitted to this Court, the Officers note that no Defendants attempted to ascertain Morrell's psychiatric stability, nor did the Township institute policies or training relating to the identification and control of police officers who may commit such conduct. The District Court did not have the opportunity to rule upon whether the failure to provide such training would constitute deliberate indifference, but nevertheless, we do not find it unreasonable that the Township did not mandate training related to police officers who harass other police officers by sending horse manure through the mail.

Township.  Therefore, we find no error in the District Court's order dismissing the officers' failure to train claim.

## IV. Conclusion

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.  Accordingly, the judgment of the District Court will be affirmed.