**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2149
_____

RABBI DR. ABRAHAM UNGER, PH.D.,
Appellant

v.

JUDGE MAUREEN SOGLUIZZO, P.J.F.P.;
MR. DANIEL PACILIO, ESQ.; CHIEF JUSTICE STUART RABNER;
MERYL G. NADLER, ESQ.; JUDGE GLENN A. GRANT, J.A.D.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-14-cv-04074)
District Judge:  Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 22, 2016

Before: CHAGARES, KRAUSE and ROTH, Circuit Judges

(Opinion filed: December 21, 2016)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se appellant Rabbi Abraham Unger, Ph.D., appeals the order of the United States District Court for the District of New Jersey granting the appellees' motion to dismiss his complaint. We will affirm.

I.    Background

Because the parties are familiar with the proceedings and the record, we will not recount the Statement of Facts contained in Unger's complaint. To summarize, the complaint contains details concerning Unger's divorce and child custody proceedings, filed in 2011 in Hudson County, New Jersey, with Judge Maureen P. Sogluizzo, presiding. Unger and the children's mother ("the mother") initially shared joint residential and legal custody of their minor children. Later, the mother pursued sole custody, and the matter was heard in a multi-day proceeding. At the time Unger filed suit in federal court, Judge Sogluizzo's custody decision remained pending.

Unger described instances when Judge Sogluizzo was aggressive and admonishing towards him at court proceedings and made rulings detrimental to his position in the custody dispute. Unger also asserted that Judge Sogluizzo failed to fulfill her obligation as a judge to report violations of law, specifically, the mother's receipt of pharmaceuticals from Argentina. At the heart of his complaint, Unger reported that Judge Sogluizzo entered an order on October 8, 2013, which designated the mother as the custodial parent and Unger as the non-custodial parent. Unger spoke with Daniel Pacilio, the judge's law clerk, who explained that the "CP" next to the mother's name in the case caption stood for "custodial parent" and the "NCP" next to Unger's name stood for "non-

2

custodial parent." Given the shared custody status, Unger asked the reason for those particular designations concerning custody, and Pacilio responded, "It's a formality." (Amended Complaint, unnumbered page 4.) Unger took steps to correct the error, explaining, "This error not only provided an Order that the mother could then utilize for unilateral decision-making regarding our children, but the substance of this particular order itself was the appointment by consent between me and opposing counsel of a parenting coordinator. . . whose first impression of the parties' custodial relationship was that the mother had final decision-making power." (Id.) Judge Sogluizzo issued an amended order on October 28, 2013.

Later, Unger contacted Meryl G. Nadler, Counsel to the New Jersey Administrative Office of the Courts, and requested copies of custody orders from the prior ten years that had been issued by Judge Sogluizzo under similar circumstances. His request was unfruitful, so he contacted Stuart Rabner, Chief Justice of the New Jersey Supreme Court, but received no response. Unger described other case-related events in his complaint, including missing evidence from his court file, and his difficulty in obtaining court filing receipts and notifications.

II.    Unger's Federal Proceedings

Unger filed his complaint, and his later-amended complaint, against Judge Sogluizzo, Pacilio, Nadler, Chief Justice Rabner, and Judge Glenn A. Grant. Unger specified a cause of action against Judge Sogluizzo under 42 U.S.C. § 1983, citing judicial misconduct in designating the mother as the custodial parent, without giving

3

Unger a pre-deprivation hearing and with discriminatory intent based on his gender.

Unger also identified a civil rights conspiracy claim in his complaint. Unger requested injunctive relief to stay the decision of the state court proceedings, pursuant to § 1983, the Anti-Injunction Act (28 U.S.C. § 2283), and the All-Writs Act (28 U.S.C. § 1651).

Following service on the Defendants, upon Unger's request, the District Court Clerk entered default against Judge Sogluizzo.[1] Unger then filed a motion for default judgment. Judge Sogluizzo filed a motion to vacate the entry of default, which the assigned Magistrate Judge granted.[2] All of the Defendants filed a motion to dismiss the complaint.

By opinion and order entered April 6, 2015, the District Court dismissed with prejudice the claims against Judge Sogluizzo and Pacilio, on the basis of judicial immunity and quasi-judicial immunity, but dismissed <u>without</u> prejudice the claims

---

[1] On page four of its opinion, the District Court describes this event as the Clerk's entry of "default judgment" against Judge Sogluizzo on August 5, 2014. However, the record reflects that the Clerk made an entry of default, not a default *judgment*. <u>See</u> Fed. R. Civ. P. 53 (a), (b). The Clerk had granted a motion for extension of time for the other Defendants to respond to the complaint.

[2] In his brief, Unger refers to the District Court's description of procedural events, previously described in note 1, <u>supra</u>, and he assigns error regarding a referral to the Magistrate Judge his dispositive motion for default judgment. <u>See</u> 28 U.S.C. § 636(b)(1)(A) and (c)(1). The record shows that the Magistrate Judge ruled on Judge Sogluizzo's motion to vacate entry of default, which was not a dispositive motion because it did not seek to dispose of claims without further proceedings. Unger's motion for default judgment was rendered moot, the Magistrate Judge denied it as such, and the proceedings continued. We discern no error here. To the extent that Unger seeks review of the Magistrate Judge's order granting the motion to vacate the entry of default, we would affirm for substantially the same reasons set forth in the Magistrate Judge's order.

4

against the remaining defendants for failure to state a claim. Unger was advised in the opinion that he had thirty days to file an amended complaint, yet the order stated, "Plaintiff's time to appeal shall run from the date of entry of this Order." (District Court Apr. 6, 2015 Op. and Order at 14.) Unger filed a timely notice of appeal.[3]

III.     Appellate Jurisdiction and Standard of Review

Before turning our attention to the merits of the appeal, we consider the question of our appellate jurisdiction regarding the April 6, 2015 order.[4] Typically, a dismissal without prejudice and providing leave to amend is interlocutory, unless a plaintiff elects to stand on the complaint. See Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976) (per curiam). In his response regarding this jurisdictional issue, Unger unambiguously states that he has elected to stand on his complaint, without further amendment. Thus, we conclude that the District Court's April 6, 2015 order is final,[5] and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review

---

[3] Unger argues that the District Court erred in failing to act on his motion to extend time to file a notice of appeal until after the filing deadline. The issue became moot when Unger filed a timely notice of appeal, and we discern no error.

[4] The District Court entered another order on April 22, 2015, acknowledging that Unger had filed a motion for reconsideration of the Magistrate Judge's order and noting that its April 6, 2015 order had rendered Unger's motion moot. Unger did not file a notice of appeal regarding this later order, and we thus do not consider it.

[5] The District Court's dismissal of claims without prejudice is at odds with the statement that the time to appeal immediately began to run. In light of our analysis under Borelli, we need not resolve the apparent inconsistencies in the District Court's order.

over the District Court's dismissal order.  See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

IV.    Merits of the Appeal

First, we consider the District Court's conclusion that Judge Sogluizzo is entitled to judicial immunity, to the extent that Unger sought damages relief.  It is well-settled under the doctrine of judicial immunity that a judge is immune from suit for monetary damages arising from judicial acts, except for those "taken in the complete absence of all jurisdiction."  Mireles v. Waco, 502 U.S 9, 11–12 (1991).  Unger's complaint concerns Judge Sogluizzo's actions while engaging in quintessentially judicial activities as a state court judge—such as presiding over hearings, making "CP" and "NCP" designations in captions of court orders, and issuing rulings and orders.  We agree with the District Court's analysis of this issue.

Unger emphasizes that he has sought only injunctive relief in this matter.  See Appellant's Reply Brief at 10.  He argues that his § 1983 due process and equal protection claims "contravene[] any concern with judicial immunity as well and strip[] State Court actors of such," and that his suit should stand against Judge Sogluizzo because she acted in violation of federal laws.  See Appellant's Brief at 27-29.  Unger explains that Judge Sogluizzo's actions violated his due process rights because the

6

erroneous "NCP" designation in the October 8, 2013 order effectively terminated his parental rights without a hearing. He adds that Judge Sogluizzo violated his equal protection rights on the basis of his gender, as an unwed father, under Stanley v. Illinois, 405 U.S. 645 (1972).[6] Unger further contends that the District Court's decision fails to recognize the "overriding supremacy of Federal law, whether by Supreme Court or Legislative Decision." Id. at 28. However, Unger is mistaken that he may proceed on his constitutional claims against Judge Sogluizzo simply because his claims assert federal law violations. As explained by the District Court, the injunctive relief that he seeks is foreclosed by the text of § 1983 itself. See 42 U.S.C. § 1983; Azubuko v. Royal, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam) (explaining that "injunctive relief shall not be granted" in a § 1983 action against a state or federal judicial officer "for an act or omission taken in such officer's judicial capacity. . . unless a declaratory decree was violated or declaratory relief was unavailable"). We agree with the District Court's conclusion that the same analysis would apply to Pacilio, for actions taken in his capacity as Judge Sogluizzo's law clerk. See, e.g., Gollomp v. Spitzer, 568 F.3d 355, 365 (2d Cir. 2009).

We now turn to the civil rights conspiracy claim against the remaining Appellees. Because the amended complaint did not identify any particular defendants within the

---

[6] Unger also argues that Judge Sogluizzo violated the Food, Drug, and Cosmetic Act by failing to report the mother's importation of pharmaceuticals, and that this violation of federal law constitutes evidence of gender discrimination against him. See Appellant's Brief at 10.

7

conspiracy claim, the District Court construed the claim as against Nadler, Chief Justice

Rabner, and Judge Grant, based on Unger's statement that they refused to provide Unger

with ten years' worth of Judge Sogluizzo's custody decisions in similar cases. We agree

with the District Court's conclusion that Unger did not present a factual basis for a

§ 1985 conspiracy claim.[7] Unger asserts that the Appellees' actions "all served to

support these fundamental Constitutional violations," see Appellant's Brief at 4, but a

conclusory allegation is an insufficient basis for stating a § 1985 conspiracy claim. See

D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.

1992) (en banc). Although it may be "plausible. . . to posit that [a] conspiracy was in

place to deprive [Unger] of the elemental civil right to public records of Judge Sogluizzo"

by Nadler, Chief Justice Rabner, and Judge Grant, as Unger suggested in his response to

the Appellees' motion to dismiss filed in the District Court (see Plaintiff's Response in

Opposition to Motion to Dismiss at 7-8), the complaint as pled is not sufficient to state a

civil rights conspiracy claim. Unger's description of the Appellees' actions does not

support an inference that the Appellees had formed any actual agreement relating to

Unger, or further, that any such agreement was "motivated by a racial or class based

discriminatory animus." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). See also

Capogrosso v. Supreme Ct. of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam)

("allegations of a conspiracy must provide some factual basis to support the existence of

---

[7] As noted earlier, Unger has elected to stand on his amended complaint as filed, without
further amendment.

8

the elements of a conspiracy: agreement and concerted action") (quoting <u>Crabtree v.</u>

<u>Muchmore</u>, 904 F.2d 1475, 1481 (10th Cir. 1990)).[8]

We have considered all of Unger's arguments and have concluded that they are without merit on the question whether the District Court's dismissal of his complaint was proper. We will affirm the District Court's order.

---

[8] Unger argues on appeal that Appellees Nadler, Chief Justice Rabner, and Judge Grant violated 5 U.S.C. § 552. He also invokes the E-Government Act of 2002 concerning the question whether "a citizen's equal protection to exercise his or her right to freedom of information was violated by State actors." <u>See</u> Appellant's Brief at 10-11. Neither of these federal laws appear to have any bearing on Unger's amended complaint, given that they apply to federal agencies and federal courts. In any case, they do not assist in his argument that the Appellees' actions rise to the level of a constitutional violation.