

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2006

# Sampson v. Berks Cty Prison

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3232

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sampson v. Berks Cty Prison" (2006). *2006 Decisions.* Paper 1409.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1409

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-3232
_____

SIDNEY SAMPSON,
                                        Appellant
vs.

BERKS COUNTY PRISON; GEORGE A. WAGNER; SGT. FISTER;
MEDICAL DEPT AT BERKS COUNTY PRISON (PRIME CARE
MEDICAL); B.C.P TREATMENT DEPT; COUNSELOR STEVE
_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 05-cv-00019)
District Judge: Honorable Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
March 10, 2006
Before: FISHER, ALDISERT AND WEIS, <u>CIRCUIT JUDGES</u>

(Filed :  March 20, 2006)

_____

OPINION
_____

PER CURIAM.

        Sidney Sampson is a Pennsylvania state prisoner currently incarcerated at

the State Correctional Institution at Graterford ("SCI-Graterford").  At the time he filed

this lawsuit, he was incarcerated in Berks County Prison.  Sampson alleged that he was

housed in an "end" cell at Berks County Prison which would become extremely cold

when temperatures outside dropped below 40 degrees. According to the complaint, all end cells suffer from inadequate heating in the winter, and prison officials are aware of this condition. In his response to the prison defendants' motion to dismiss, Sampson maintained that, every winter, prison officials would circulate an extra blanket to each inmate housed in an end cell because they were aware of how cold those cells became. Sampson alleged that, on at least one occasion, it was so cold in his cell that he was able to see his breath.

From December 20, 2004 to January 1, 2005, when the complaint appears to have been drafted, Sampson filed at least three grievances complaining of the cold temperature in his cell and asking to be moved to another cell with adequate heat.[1] According to the complaint, numerous such cells were available. Sampson claims that, in response to his complaints, he was deprived of his two-hour recreation period and "locked in" his cell for 24 instead of the usual 22 hours. Sampson also requested long johns, winter issue pants and shirts, gloves, a hat, and a winter coat, but was told that these items were not issued by the prison but could be purchased through the commissary and/or friends and family program. Sampson also claimed that he became sick during this time with flu-like symptoms which lingered for four months due to inadequate medical care and the temperature in his cell. During the same time period, Sampson submitted at least

---

[1] In his informal brief, Sampson alleges that he was kept in an extremely cold cell from December 21, 2004 until February 15, 2005, and that he did not receive proper medical treatment until March 2, 2005 when he was transferred to SCI-Graterford.

2

three sick call requests, two of which note that he refused sick call, something which Sampson adamantly denies.

Sampson named as defendants Berks County Prison, Warden Wagner, Sergeant Fister, Berks County Prison Treatment Department, Prime Care Medical, and several John Does (the medical supervisor, and the treatment counselor and his supervisor). None of the "John Doe" defendants appear to have been served. Counsel for Berks County Prison, Warden Wagner, Sgt. Fister, and the Berks County Prison Treatment Department, and counsel for Prime Care Medical (erroneously identified as the Berks County Prison Medical Department) each filed motions to dismiss. In a opinion which concluded that plaintiff did not assert the "unquestioned and serious deprivation[] of basic human needs" nor deliberate indifference to serious medical needs, the District Court dismissed plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of a dismissal for failure to state a claim on which relief may be granted is plenary. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). For such a dismissal, it must be clear as a matter of law that plaintiff could not prove any set of facts that would entitle him to relief. Id. We are obliged to accept the truth of all factual allegations set forth in the complaint and all reasonable inferences that can be drawn from them. Id.

On appeal, Berks County Prison, Warden Wagner, Sgt. Fister, and the

3

Berks County Prison Treatment Department ("Berks County Appellees") argue that the complaint failed to state a claim against Warden Wagner or Sgt. Fister in their individual capacities, as Sampson failed to aver that Warden Wagner had personal knowledge of or knowingly acquiesced in the alleged constitutional violations, and admitted that Sgt. Fister restricted his recreation time because he made inappropriate use of the grievance process. The Berks County Appellees assert that the complaint shows only that Sampson was disciplined for abuse of the inmate communications system, and not that either Warden Wagner or Sgt. Fister acted with deliberate indifference to his basic human needs. With respect to his claims of denial of access to medical care, the Berks County Appellees maintain that Sampson has neither alleged a serious medical need nor deliberate indifference on the part of the prison administration. Finally, they argue that Sampson cannot state a claim against any of the Berks County Appellees in their official capacities, as such a claim is construed as one against the municipality and requires that the constitutional injury alleged be the result of a municipal policy or procedure.

Prime Care Medical, which was erroneously identified in the complaint as the Berks County Prison Medical Department, argues that Sampson neither demonstrated that he had a serious medical condition nor that Prime Care was deliberately indifferent to his medical needs. In fact, Prime Care maintains, Sampson admitted that he did receive medical attention for his ailment and therefore cannot state a claim against it for an Eighth Amendment violation. Finally, Prime Care argues that the District Court properly dismissed Sampson's claim against it, as it was impermissibly premised upon vicarious

4

liability.

We conclude that the District Court erred in dismissing Sampson's claims against the Berks County Appellees, both in their individual and their official capacities. In order to state a claim for an Eighth Amendment violation, a plaintiff must allege facts sufficient to demonstrate both (i) an objectively serious deprivation of an identifiable human need and (ii) that a prison official acted with deliberate indifference in effecting the deprivation. See Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). As the Supreme Court recognized in Wilson:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise–for example, a low cell temperature at night combined with a failure to issue blankets.

501 U.S. at 304. It is apparent under Wilson that low cell temperatures may satisfy the objective deprivation requirement of an Eight Amendment claim if warranted by the surrounding circumstances. Thus, whether the cell temperature, the length of the inmate's confinement in such temperatures, and the failure of prison officials to ameliorate the cold temperatures creates a sufficiently serious deprivation of the human need of adequate shelter to state a claim under the Eighth Amendment is often an issue to be determined by the trier of fact. See Dixon v. Godinez, 114 F.3d 640, 643-44 (7th Cir. 1997) (holding that material dispute existed as to whether prison-issue clothing and blankets were sufficient to combat prolonged cold temperatures in cell).

In his complaint, Sampson alleged that the temperature in his cell was unreasonably low, that prison officials refused to provide him with additional clothing, move him to a warmer cell, or take any other measures to ameliorate the cold. He also asserted that he directed grievances to both Warden Wagner and Sgt. Fister, and that neither of them took any action. While it is by no means clear that Sampson will be able to prove a set of facts consistent with these allegations, the allegations suffice to state a claim against Warden Wagner and Sgt. Fister, and the District Court should not have dismissed Sampson's claims against them in their individual capacities at this early stage.

The Berks County Appellees also argue that Sampson failed to state a claim against Warden Wagner or Sgt. Fister in their official capacities, or against Berks County Prison or the Berks County Prison Treatment Department as entities, because such a claim is construed as one against the municipality, and the inmate, therefore, must allege that the constitutional injury arose as a result of a municipal policy or custom. This Court has recognized that there are three situations in which the acts of a government employee may be deemed to be the result of a municipal policy or custom. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003). One such situation exists where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need.'" Bd. of County Comm'rs v. Brown, 520 U.S. 397, 418 (1997) (Souter, J.,

6

dissenting) (quoting <u>Canton v. Harris</u>, 489 U.S. 378, 390 (1989)).

Here, Sampson not only alleges in his complaint that prison officials were aware of the unusually cold temperatures in the end cells, but also attaches a copy of an inmate communication form on which the Grievance Counselor responds to one of Sampson's complaints as follows: "Due to the population of the prison and the <u>known problem with heating the 'end' cells</u> your request to move is denied. The maintenance department is working on a solution to fix this problem. In the meantime I will see if we can get more heat to your cell." (Emphasis added.) Sampson's uncontested allegation of a persistent, "known problem" with heating the end cells throughout the prison is sufficient to state a claim against the municipality under the Eighth Amendment for failing to ameliorate the heating problem.

Finally, Sampson alleges that Appellees violated his right to be free from cruel and unusual punishment by denying him access to medical care. The District Court held that the complaint failed to "allege conduct of defendants that showed 'deliberate indifference to [his] <u>serious medical needs</u> . . . .'" (Emphasis added.) We have indicated that deliberate indifference can be manifested by a variety of actions, including: (i) the denial of reasonable requests for medical treatment which expose an inmate to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons. <u>See</u> <u>Monmouth County Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346-47 (3d Cir. 1987); <u>see also</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).

7

With respect to what qualifies as a serious medical need, we have held that "a medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Lanzaro, 834 F.2d at 347 (citations omitted).

The Berks County Appellees argue that Sampson fails to state a claim for the denial of medical care, as he was called to go to the medical department, but refused to do so. Sampson counters that, although his sick call slips indicate that he refused sick call, he never did so. Sampson included with his complaint an affidavit from his cellmate, Michael Jones, who states that on December 28, 2004, when Jones was called for sick call, he twice asked the C.O. if Sampson was on the list as well, and the C.O. stated that he was not. Jones also says that he indicated to the nurse that he knew Sampson had put in a sick call slip, and the nurse smiled and said Sampson's name was not on the sick call list yet. Construed liberally, these allegations describe conduct that, at this stage of the litigation, could be said to manifest deliberate indifference under any one (or several) of the bases articulated in Lanzaro.

Appellees further maintain that, even if Sampson could establish deliberate indifference, he merely suffered from a "common cold," which does not rise to the level of a serious medical need. Implicit in this argument is that any amendment of the complaint would be futile. However, Sampson has alleged that he was sick for four months and described his symptoms as follows: "cold, head cold, backaches & pains,

8

chest cold, earaches, body aches & pains, headaches, stuffy nose, sore throat, chill, my feet, head, ears, hands are cold all the time." He further argues that his illness did not begin to improve until he was transferred to SCI-Graterford and began to receive antibiotics, which would not be required to treat a "common cold." We cannot say as a matter of law, based on the record before us at this time, that Sampson's ailment did not rise to the level of a serious illness. See Gutierrez v. Peters, 111 F.3d 1364, 1372-73 (7th Cir. 1997) (explaining that "given the liberal standards governing federal notice pleading (particularly in conjunction with the leniency with which pro se complaints must be evaluated), the 'seriousness' determination will often be ill-suited for resolution at the pleading stage"); Ellis v. Butler, 390 F.2d 1001, 1003 (8th Cir. 1989) (noting difficulty of assessing seriousness of alleged medical conditions based on pleadings alone). Resolution of this issue will require testimony or affidavits of the parties on remand. As Sampson should, at the least, have been permitted to amend his complaint prior to a dismissal for failure to state a claim, he should be given the opportunity on remand to amend his complaint to state his claims with greater specificity and to clarify which employees he believes prevented him from obtaining medical care. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

Sampson's remaining allegations are that Prime Care's treatment regimen was insufficient in comparison to the regimen prescribed after he was transferred to SCI-Graterford and that the Prime Care physician failed to order that he be moved to a heated cell. We will affirm the District Court's order of dismissal as to these claims. Although

9

the District Court did not base its decision on this ground, Sampson's claims against Prime Care are impermissibly premised on a theory of respondeat superior. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980) (affirmance may be based on any ground supported by the record); Natale, 318 F.3d at 583 (§ 1983 claims may not be premised solely on the doctrine of respondeat superior).

Because Sampson has set forth sufficient allegations to state a claim against the Berks County Appellees for violation of his Eighth Amendment rights, the District Court's order will be vacated with respect to them and remanded for further proceedings. On remand, Sampson should be provided an opportunity to amend his complaint to address any deficiencies raised by these defendants in their motion to dismiss. The District Court's order will be affirmed to the extent it granted the motion to dismiss filed by Prime Care Medical, Inc.